# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-1177V
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | Chief Special Master Corcoran |
| KATHLEEN STRYSKI, | * | |
| | * | |
| Petitioner, | * | Filed: October 17, 2022 |
| | * | |
| v. | * | Findings of Fact; Onset and Site of |
| | * | Vaccination; Flu Vaccine; Pneumovax-23 |
| SECRETARY OF HEALTH AND | * | Vaccine; Shoulder Injury Related to |
| HUMAN SERVICES, | * | Vaccine Administration (SIRVA) |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Andrew Donald Downing,* Downing, Allison & Jorgenson, Phoenix, AZ, for Petitioner.

*Lauren Kells*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION DISMISSING TABLE CLAIM[1]

On September 10, 2020, Kathleen Stryski filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Program").[2] ECF No. 1. Petitioner alleged that her receipt of the seasonal influenza ("flu") vaccine on October 18, 2018, resulted in chronic pain and a Should Injury Related to Vaccine Administration ("SIRVA"). *Id.* She also alleged that she experienced vaccine-related injuries in both arms due to improper administration of second vaccine that same day—the Pneumovax-23 ("pneumonia") vaccine—but has acknowledged that this vaccine is not covered under the Vaccine Program. *See* Petitioner's Reply, dated April 29, 2022 (ECF No. 38) ("Reply") at 3.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

The matter was originally assigned to the Special Processing Unit ("SPU"), based on the perceived possibility of settlement given the nature of the claim, but later transferred out of SPU due to the complicated factual issues presented, such as whether the covered flu vaccine was administer in the relevant arm, or whether other Table elements had been established.

The parties have now briefed some of those disputed fact issues. Petitioner's Motion, dated March 17, 2022 (ECF No. 35) ("Mot."); Respondent's Opposition, dated April 15, 2022 (ECF No. 37) ("Opp."); Petitioner's Reply, dated April 29, 2022 (ECF No. 38) ("Reply"). Based upon my review of the record and the parties' arguments, and for the reasons discussed below, I find that onset of Petitioner's SIRVA did not occur within 48 hours of vaccination—requiring dismissal of the Table claim (regardless of whether Petitioner is correct about the covered vaccine's administration situs).

## I. Relevant Procedural History

After the matter had been assigned to SPU, the parties engaged in settlement discussions, but the case was later transferred because it did not appear likely that the factual disputes at issue could be resolved in the SPU context in a timely manner. ECF No. 29. The matter was then reassigned to me. ECF No. 33. After Respondent filed his Rule 4(c) Report, I determined that there was an issue of fact regarding Petitioner's alleged situs of administration of the flu vaccine, as well as satisfaction of the 48-hour post-vaccine onset Table requirement. *Scheduling Order*, dated January 27, 2022. The parties have since filed briefs in support of a fact finding, and the matter is now ripe for resolution.

## II. Issue

At issue is whether (a) Petitioner received the flu vaccine in the injured right shoulder, and (b) Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours, as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA.

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general,

2

warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV. Relevant Facts

I make the following findings after a complete review of the record, including all medical records, affidavits, Respondent's Rule 4 Report, the parties' briefs, and any additional evidence filed:

- Petitioner was seventy-six years old on October 18, 2018, with no previous shoulder problems, when she received the flu vaccine at issue. Ex. 1 at 1.

- Petitioner explained in her affidavit that she could not lift her arms and had instant pain after the vaccinations that never dissipated. Ex. 1 at 1; Ex. 12 at 1. She has stated that "[a]t first, [she] did not know how to report this pain or limited mobility, and [she] did not know what to do... [she] thought it would go away on its own, so [she] waited." Ex. 12 at 1. Petitioner's daughter asserted similarly in her affidavit that her mother experienced shoulder pain almost immediately following her vaccinations. Ex. 15 at 1.

- One vaccination record lists all vaccines received by the Petitioner at the Gilbert Center for Family Medicine in Gilbert, Arizona (the "Gilbert Center"), from January 2008 to October 2018. *See generally* Ex. 2 at 2. This document confirms Petitioner received the two vaccines in question on October 18, 2018, as alleged, but also contains a handwritten note articulating that Petitioner received the (non-covered) pneumonia vaccine in her left deltoid, and the flu vaccine in her right deltoid. *Id.* The handwritten notations are unsigned and undated.

- A second vaccination record appears to be the product of a subpoena issued in this case in May 2021 and directed to the Gilbert Center. *See generally* Ex. 11. It contains a computer form administration document. While the document also confirms receipt of two vaccines on October 18, 2018, the document also states that the two vaccines were administered in the *opposite* shoulders from what Exhibit 2 indicates. *Id.* at 7–9. Also produced in response to the subpoena is a cut-off list of data about both vaccines, with an indication for the non-covered pneumococcal vaccine that the relevant record was "modified" on December 26, 2018, although the manner or purpose of modification is not specified. *Id.* at 8–9.

4

- Six weeks post-vaccination, on December 3, 2018, Petitioner sought care with a primary care provider at the Gilbert Center for complaints of anxiety and fatigue beginning four months prior (which would be August 2018). Ex. 7 at 49. Petitioner did not mention any shoulder issues at this visit. *Id.* at 49–56; Ex. 12 at 1.

- December 19, 2018 (two months post-vaccination), Petitioner returned to the Gilbert Center for a Medicare preventative exam. Ex. 7 at 39–48; Ex. 12 at 1. Although it was noted at this time that she was having difficulties with activities of daily living, no specific complaints of pain in either shoulder were noted in the record for this visit. Ex. 7 at 46. Specifically, Petitioner underwent a musculoskeletal exam, containing the detail that a "[v]isual overview of all four extremities is normal." *Id.* The exam further noted that the results were unremarkable. *Id.* at 47. Petitioner's affidavit, however, maintains that she was at this time having trouble with her shoulders that were in turn interfering with her normal activities. Ex. 12 at 1. She explained that "[w]eeks later, when it became clear that the pain and limited mobility were not going away on their own, [she] began to tell [her] doctors." *Id.*

- On March 14, 2019—now nearly five months after receiving the flu vaccine—Petitioner saw Mark Schlotterback, M.D., a family medicine practitioner, for musculoskeletal pain in her upper right arm, which she now reported (for the first time) having begun five months before, after receiving the pneumonia vaccine. Ex. 7 at 32. She described the pain as moderate to severe, and said that it occurred both constantly, but also fluctuated. *Id.* Petitioner specifically stated that she was "concerned about SIRVA." *Id.* Dr. Schlotterback administered a cortisone injection to Petitioner's right shoulder bursa. *Id.* at 36.

- Petitioner returned to Dr. Schlotterback on April 16, 2019, and now reported that she had *bilateral* shoulder pain that began six months earlier. Ex. 7 at 24. She indicated that the cortisone injection previously given in her right shoulder did not help her pain. *Id.* The assessment was acute pain of the right shoulder and left anterior shoulder pain. *Id.* Another physical exam on May 10, 2019, reported similar findings. Ex. 4 at 5

- On July 17, 2019, Petitioner saw Keith A. Jarbo, M.D., an orthopedist, for "thyroid disease bilateral shoulder pain and stiffness after getting vaccinations." Ex. 4 at 23. Petitioner reported that seven months earlier, she received a flu injection in her right shoulder and a pneumonia injection in the left shoulder. *Id.* at 24. She complained that while both shoulders had pain that radiated down to her elbow, her left arm was worse than her right. *Id.* Dr. Jarbo's assessment was bilateral shoulder adhesive capsulitis. *Id.* at 23, 25. Petitioner received a cortisone

5

- injection in each shoulder, and was referred to physical therapy ("PT"). *Id.* at 23; Ex. 3 at 161.

- Petitioner underwent an initial PT evaluation with Joseph Jalaf, PT, on August 8, 2019, for bilateral adhesive capsulitis. Ex. 3 at 6, 150–51. She reported that her onset began December 2018,[3] when she purportedly received a flu vaccination in her right arm and a pneumonia vaccination in her left arm. *Id.* at 151. She stated that her bilateral arm pain never went away after her vaccinations, and that she experienced a sudden, significant decrease in strength and range of motion when reaching overhead or behind her back. *Id.* An examination revealed limited range of motion in both shoulders. Ex. 4 at 29. The therapist opined that Petitioner's rehabilitation potential was fair to good due to the "idiopathic nature of onset." *Id.* at 30.

- On September 9, 2019, Petitioner presented to the Gilbert Center for hyperlipidemia, hypertension, hypothyroidism, depression, and headaches. Ex. 7 at 5. The treatment notes indicate that Petitioner's acute right shoulder pain began on April 16, 2019, and her right rotator cuff tendinitis began on March 14, 2019. *Id.* at 7. Her left anterior shoulder pain was listed as beginning on May 8, 2019. *Id.* at 9. Notably, this visit was Petitioner's first doctor's appointment following an automobile accident. *Id.* at 14. Petitioner reported tension headaches but stated that her shoulders were unchanged from before the accident; and refused a prescription muscle relaxant. *Id.*

- On September 12, 2019, Petitioner had a PT progress evaluation. Ex. 4 at 32–36. Petitioner's range of motion improved in both shoulders since her first session, although it was still reduced. *Id.* at 34.

- On September 27, 2019, Petitioner saw her orthopedist, Dr. Jarbo, for pain in her left shoulder. Ex. 4 at 20–22. Petitioner reported that she was previously in a car accident on September 2, 2019, however, she did not think her shoulder was affected by the accident. *Id.* at 20. Dr. Jarbo opined that Petitioner's adhesive capsulitis had improved on her right side but was concerned about her left shoulder rotator cuff tear and ordered an MRI. *Id.* at 20–22.

- On October 9, 2019, Petitioner had an MRI of her left shoulder, for what was reported as "[l]eft shoulder pain since [December 18, 2018]." Ex. 4 at 37. The MRI showed mild to moderate tendinosis of the supraspinatus with limited bursal fraying and no full-thickness or significant partial thickness cuff tear. *Id.* at 38. It also showed small subacromial enthesophyte and low-grade adhesive capsulitis in the axillary recess with capsular thickening and edema present. *Id.*

---

[3] Petitioner's Motion argues that these records reference the onset of pain beginning in October 2018, but most reference an onset date of *December 2018*, and even others indicate a later date in 2019. Mot. at 3–4.

6

- Petitioner followed-up with Dr. Jarbo on October 16, 2019, complaining of significant left shoulder joint pain and stiffness after getting her vaccinations. Ex. 4 at 14–15. Petitioner received a cortisone injection in her left shoulder. *Id.* at 16. Dr. Jarbo referred Petitioner for twelve PT visits over six weeks, with a diagnosis of left shoulder adhesive capsulitis. Ex. 3 at 120.

- On October 25, 2019, Petitioner had a PT evaluation. Ex. 4 at 40–44. However, Petitioner continued to have measurable weakness in her shoulder joint, as well as shoulder flexion or abduction of less than 120 degrees. Ex. 3 at 109. Following an additional seven PT appointments, Petitioner's November 8, 2019 progress note stated that she was able to lift her arm slightly higher and was getting closer to doing her hair, but that she was still very limited in her movements and activities on her left side. Ex. 4 at 46. Her bilateral active range of motion and passive range of motion had also improved significantly. *Id.* at 47.

- After the next four PT sessions, Petitioner exhibited improvement in her left shoulder range of motion, but the therapist noted that she would continue to benefit from skilled PT to improve shoulder range of motion and strength. Ex. 4 at 53. On November 25, 2019, Petitioner's insurance carrier denied any further PT appointments. Ex. 3 at 45. The insurer's decision stated that Petitioner was not responding to skilled care and that her daily tasks would get better with practice at home. *Id.*

- Since these PT sessions, Petitioner has had other visits with treaters, but for ailments unrelated to her shoulder pain. Ex. 9 at 12–13; Ex. 10 at 3–21; Ex. 14 at 18, 21.

## V.   Parties' Arguments

Ms. Stryski maintains that she received the covered flu vaccine in her right arm, and that she can otherwise meet the Table elements to prove a SIRVA injury for that arm. Mot. at 6; Reply at 8–9. In support of the situs contention, she points to a handwritten note in the Gilbert Center vaccine history record as support for this assertion.[4] Mot. at 4; Reply at 2; Ex. 2 at 2. The subpoenaed record indicates the opposite, but it also references the pneumonia vaccination with a category titled "modified," that she maintains was partly cut off, making it difficult to ascertain what "modified" means in this context. Mot. at 2; Reply at 4–5; Ex. 11 at 7–9. This modification date was two months post-vaccination. Ex. 11 at 8. Additionally, the flu vaccine print-out record does not have a modified category, but it appeared that the page is cut off. *Id.* at 9. Petitioner

---

[4] Ultimately, Petitioner argues that she received vaccine-related injuries in both arms, so she is entitled to compensation regardless of which arm I determine she was administered the flu vaccination (rendering the issue almost moot). Reply at 2.

7

noted that she was attempting to obtain a complete copy of Ex. 11, but one has yet to be provided. Mot. at 2. Regardless, she argues that the second record, which is contrary to her assertion, is likely inaccurate, and greater weight should be afforded to the Gilbert Center vaccine history document. Reply at 4–5.

Regarding onset, Petitioner stresses that her original and supplemental affidavits (from herself and her daughter) described immediate pain after vaccination, and in some of her physical visits, she noted that onset began in October 2018. Mot. at 5; Reply at 5–6. She pointed out that her December 19, 2018 visit referenced on the review of systems difficulty with activities of daily living, which she stated in her affidavit was due to shoulder injuries (even though this shoulder pain was not discussed in the medical record). Reply at 3, 5–6; Ex. 7 at 46; Ex. 12 at 1. Any inconsistency as to the date of onset beginning in December 2018, or at an even later time during the spring to summer of 2019, she attributes to an error in the records. Reply at 7–8; Ex. 4 at 24; Ex. 7 at 24, 32.

Respondent, in contrast, argues that Petitioner did not provide sufficient evidence to support her claim. The flu vaccine was more likely administered in the left arm, as the subpoenaed record indicates. Opp. at 9, 11–12; Ex. 11 at 7–9. Though the vaccination record had a modification date some two months post-vaccination, Petitioner had not been able to provide evidence as to what was actually modified in the record, and thus no reason for doubting it had been provided. Opp. at 9–10. The handwritten note Petitioner used to support her site of vaccination was unsigned, so Respondent found it unreliable. *Id.* at 11. Respondent also maintained that neither of Petitioner's sworn affidavits addressed the site of vaccination. *Id.*; Ex. 1 at 1; Ex. 12 at 1. Petitioner's comments to her medical providers offered no additional clarification, as she originally maintained that she had right arm pain due to the pneumonia vaccine. Opp. at 11; Ex. 7 at 32.

Respondent also argues that Petitioner did not establish that her onset began within 48 hours of vaccination. She did not seek treatment for approximately six weeks after her vaccinations, and she had two intervening medical visits in December, with no mention of shoulder pain at either. Opp. at 13. The first discussion of shoulder pain occurred in March of 2019—five months post-vaccination, well past the 48-hour onset. *Id.* In addition to this delayed reporting, Petitioner misreported dates of her onset on at least two occasions, stating that it occurred in December of 2018. *Id.*; Ex. 4 at 37; Ex. 3 at 159. Respondent found that Petitioner's affidavits did not offer compelling evidence to address these issues.

8

## ANALYSIS

A preliminary issue in dispute is the site of vaccination. Petitioner relies on the handwritten note on the Gilbert Center immunization history document as supportive evidence. Ex. 2. Respondent prefers the computer print-out record. Ex. 11 at 7–9. Petitioner maintained that this second document was less reliable, because the document appears to have been modified after vaccination, but there was no indication as to what or why the modifications were made. Reply at 4–5. She acknowledges that, in fact, both Ex. 2 and 11 are modified records (since the vaccine history record contains the handwritten details) but asserted that the handwritten record deserves more weight. *Id.*

Petitioner accurately observed that the computer print-out record includes the suggestion that it was somehow modified. But it remains uncertain as to what this means. Indeed, it is not even clear from the overall record *when* the handwritten note on the Gilbert Center immunization history record was set down—and hence *which* of the two competing records has temporal priority.

Ordinarily, somewhat more weight would be given to a handwritten note over a computer print-out in evaluating a question of vaccine administration situs (in the absence of proof that the handwritten note was made in the context of the litigation, e.g. at the request of a party). This is especially true since in this case, the handwritten note does not contradict anything on the vaccine history document, but instead provides some detail missing from it. But I need not resolve this question—for there is a more fundamental issue impeding Petitioner's Table claim, and that is the question of proof of onset. I will thus assume for sake of analysis that Petitioner's right-side situs allegations are sufficiently substantiated. (This is somewhat consistent with the first recorded instance in which *any* shoulder pain is reported, since that relates to the right shoulder (*see, e.g.*, Ex. 7 at 32)).

Here, Petitioner and her daughter have alleged in their affidavits that Petitioner's shoulder pain had an immediate onset after her receipt of the flu vaccine on October 18th. However, her subsequent medical records were inconsistent with this contention. She had two visits to the Gilbert Center after vaccination—both in the same month, and within six weeks to two months of the October vaccination—but did not report any shoulder pain at those visits. *Id.* at 49; Ex. 7 at 39–48. Then another three months passed before a third medical visit. It was thus not until March 14, 2019, that she was "concerned about SIRVA." Ex. 7 at 32. And this was *five* months after the vaccination. Delay in seeking treatment is not per se dispositive on issues of Table onset, and SIRVA claimants can often reasonably make the case that they misconstrued the nature or seriousness of their injury. But delay *coupled* with opportunities to seek treatment—as this record establishes—is far different.

9

The medical record thus demonstrates Petitioner had ample opportunity to complain of her injury to the very providers who administered the vaccine allegedly causal—but did not. And this is not a case in which the petitioner has offered persuasive reasons to doubt the record, or treater witness statements indicating that pain was discussed despite its absence from the contemporaneous record. Petitioner argues that her second December 2018 visit (two months post-vaccination) was the first indicator of shoulder pain, as it was noted that she was having difficulty with activities of daily life, which she has alleged were attributable to that pain. Ex. 7 at 46; Ex. 12 at 1; Reply at 3. But this argument, while not facially unreasonable, has not sufficiently shown why these complaints would be attributable to shoulder pain for me to reasonably infer that this visit was actually "about" the pain itself.

Petitioner also inconsistently reported the date of her onset to her treaters. In some records, Petitioner reports that her pain began after vaccination Ex. 4 at 24; Ex. 7 at 24, 32. However, in other records she reported that her onset began in December 2018. Ex. 3 at 151, 159; Ex. 4 at 37. On another occasion she noted even later dates between the spring and summer of 2019. Ex. 7 at 7, 9. In response, Petitioner maintains that records inconsistent with her onset allegations are simply inaccurate. Thus, her October 19, 2019 MRI contained a summary history, and she maintains it is unclear where the December 2018 date originated. Reply at 7. She argued that this could be a typo as it was clear her vaccination date was October 2018. *Id.* She had a similar argument as to a PT evaluation, which similarly reported a December 2018 onset date. She opined that this date was recorded as the first time she sought treatment from her physician. *Id.* at 8.

It is well-settled that even though "oral testimony *in conflict with* contemporaneous documentary evidence deserves little weight," that testimony can be credited where it provides detail that the record omits, or is corroborated with other proof. *Kirby*, 997 F.3d at 1383 (emphasis added). However, and despite Petitioner's efforts, she has not provided sufficient corroborative proof to establish that her statements *should* receive greater weight than her actual recorded medical history. The series of medical visits from October 2018 to March 2019 simply do not, when viewed collectively, suggest preponderantly an onset within the Table timeframe. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Here, greater weight should be accorded this information over Petitioner's allegations, or subsequent records.

The standard applied to resolving onset for an alleged Table SIRVA is liberal, and will often permit a determination in a petitioner's favor in cases where there is some delay in treatment, or missed opportunities to report pain promptly. This is especially appropriate in the *absence* of contemporaneous and direct statements within the petitioner's medical records to the

10

contrary. However, not every case can be so preponderantly established. Ultimately, the resolution of such fact issues involves weighing different items of evidence against the overall record.

Here, Petitioner has not preponderantly established that onset of her pain occurred within 48 hours of vaccination—meaning that she cannot proceed in this action with a Table SIRVA claim. Petitioner may try to argue, however, a potential causation-in-fact injury claim based on pain caused by the flu vaccine (although the situs issue may still require resolution in that context).

## CONCLUSION

Petitioner's Table SIRVA claim is dismissed, for the reasons set forth above. On or before November 30, 2022, Petitioner may file an amended petition setting forth the basis for a non-Table, causation-in-fact claim based on an injury attributable to the covered flu vaccine.

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master